IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CHARLES A. MERRELL, JR.,           )
                                   )
            Petitioner,            )
                                   )
                                   )       CIV-05-1318-M
v.                                 )
                                   )
RANDALL WORKMAN, Warden,           )
                                   )
            Respondent.            )

REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is challenging the conviction for

Robbery in the First Degree after former conviction of two or more felonies entered against

him in the District Court of Oklahoma County, Case No. CF-2001-4913.  Respondent has

responded to the Petition and filed the relevant state court records, including the transcripts

of Petitioner's trial and sentencing (hereinafter TR___ and STR___). The matter has been

referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C.

§ 636(b)(1)(B).  For the following reasons, it is recommended that the Petition be DENIED.

I. Background

Petitioner was charged in the District Court of Oklahoma County with first-degree

robbery by force or fear, and counsel was appointed by the court to represent him.  At

Petitioner's trial conducted on April 12-14, 2004, the 73-year-old victim, a retired school

1

teacher, testified that on September 1, 2001, as she was entering a convenience store near the corner of Northwest16[th] Street and Rockwell in Oklahoma City someone approached her from behind, pushed her forward, knocking her to the ground, and took her purse.  As she fell to the ground, the victim's wrist was broken in several places, and she eventually had to undergo surgery to repair the wrist.  The victim testified that she did not see the robber's face but that she saw the robber run across 16th Street toward some apartments.  Two witnesses testified that they were present at the convenience store and witnessed the robbery of the victim.  One of the eyewitnesses, Mr. Jenkins, testified that he was using a pay telephone in front of the store, that he heard the victim scream, and that he saw a man yanking on a woman's purse as she was going down to the ground.  Mr. Jenkins testified that he was 10 to 20 feet from the robbery and that he clearly saw the robber's face and facial profile.  Mr. Jenkins identified the Petitioner as the robber and testified that he was "100 percent" certain of this identification.  (TR vol. I, at 75).   According to Mr. Jenkins, Petitioner took the victim's purse as she fell to the ground, tucked the purse under his arm, and ran across 16th Street to an apartment complex.  Mr. Jenkins stated that he followed Petitioner across the street and observed Petitioner go into a courtyard in the complex but lost sight of Petitioner. Mr. Jenkins testified that he walked through the complex and "some guys from across the street" advised him to look in the bushes  where he found the victim's then-empty purse. (TR vol. 1, at 84-85).  The other eyewitness, Ms. Wever, testified that she also observed the robbery of the victim at the convenience store from a distance of four to five feet, and she positively identified Petitioner as the robber.  She testified that after taking the victim's purse

2

and pushing the victim to the ground Petitioner ran across 16th Street with the victim's purse. She testified she picked up the victim and took the victim into the convenience store. She gave a description of the robber to law enforcement officers. She then followed Petitioner into the apartment complex across the street where she observed the Petitioner walking past her, panting and sweating, although he was no longer wearing a shirt. Ms. Wever testified she saw Petitioner's face for approximately three minutes, that he then started running again, and she followed him but lost sight of him. Ms. Wever and Mr. Jenkins both testified they identified Petitioner as the robber after he was arrested a short time later by law enforcement officers. Ms. Wever testified that she was "[a]bsolutely sure" of her identification of Petitioner as the robber. (TR vol. 1, at 153).

Police officers testified concerning their investigation of the robbery at the convenience store located at 1628 North Rockwell and the arrest of Petitioner in the vicinity of an apartment located at 1802 North Rockwell. The officers testified that the two eyewitnesses positively and conclusively identified Petitioner as the robber immediately after he was apprehended. One of the officers testified that the description of Petitioner given to him by Ms. Wever was consistent with Petitioner's appearance at the time of his arrest. Petitioner testified at the trial that he did not commit the robbery, that he had been in prison three times and had eight prior felony convictions, that he observed another individual committing the robbery, that seeing the robbery "scared" him because of pending misdemeanor warrants filed against him for unpaid fines, and that he ran away from the convenience store to a neighboring apartment complex where a friend lived. Petitioner

3

testified that he asked an individual at the apartment complex for a shirt in order to "cover my tattoos" because "somebody that was at the [convenience] store" was after him. (TR vol. 2, at 46-47).  He later amended this statement and admitted he was running from the police. (TR vol. 2, at 57-58).  Although Petitioner testified on direct examination that he had been living with his sister and working as a carpet layer for seven days at the time of the robbery, Petitioner admitted on cross-examination that he told the jailers who booked him into the jail following his arrest that he did not have an address or a job.  The jury found Petitioner guilty of the robbery offense and in a second-stage sentencing proceeding recommended that a forty-year term of imprisonment be imposed upon Petitioner.  On April 23, 2004, Petitioner was sentenced consistent with the jury's assessment of punishment.

With different counsel appointed for the purpose of an appeal, Petitioner appealed the conviction to the Oklahoma Court of Criminal Appeals ("OCCA").   In his direct appeal, Petitioner asserted that the trial court erred in refusing to give the jury a requested instruction on eyewitness identification, that the trial court erred in refusing to give the jury a requested cautionary instruction on hearsay testimony, and that prosecutorial misconduct and trial errors, when considered cumulatively, denied Petitioner his due process right to a fair trial under the United States and Oklahoma constitutions.  Response, Ex. 1.  The State of Oklahoma opposed each of these contentions, asserting that Petitioner's due process right to a fair trial was not denied. Response, Ex. 2.  In a summary opinion issued on December 28, 2004, the OCCA rejected each of Petitioner's contentions. Response, Ex. 3 (Merrell v. State of Oklahoma, No. F-2004-441 (Okla. Crim. App. Dec. 28, 2004)(unpublished summary op.)).

Petitioner subsequently filed a *pro se* application for post-conviction relief in the trial court in which he asserted that (1) the trial court lacked jurisdiction to impose the conviction and sentence upon him where the trial court failed to rule on his motion to quash and dismiss filed before his first trial[1]; (2) Petitioner was denied effective assistance of trial counsel where counsel failed to object to the admission of victim-impact evidence through the testimony of the robbery victim and failed to call as witnesses Petitioner's "requested character witnesses, namely his Sister and Employer....;" (3) prosecutorial misconduct; (4) violation of Brady v. Maryland, 373 U.S. 83 (1963), due to the prosecutor's failure to disclose the existence of a "Blue T-Shirt" that a police officer testified he saw hanging from Petitioner's back pocket after he was handcuffed; (5) denial of a speedy trial after the mandate issued by the OCCA reversing and remanding the case for a new trial; (6) denial of his right of confrontation of a potential prosecution witness; and (7) denial of effective assistance of appellate counsel for failure to raise the preceding claims. Response, Ex. 4.  On July 18, 2005, the district court entered an order denying the post-conviction application. Response Ex. 5.  Petitioner appealed this decision. Response, Ex. 6.  In an order entered October 17, 2005, the OCCA affirmed the district court's decision. Response, Ex. 7 (Merrell v. State, No. PC-2005-745 (Okla. Crim. App. Oct. 17, 2005)(unpublished op.)).  Except for

---

[1]The conviction entered against Petitioner at the conclusion of his first trial in Case No. F-2001-4913 was overturned on appeal and the case remanded for a new trial.  See Response, Ex. 3 (Merrell v. State of Oklahoma, No. F-2004-441 (Okla. Crim. App. Dec. 28, 2004)(unpublished summary op.)(footnote one in the summary opinion states that Petitioner was previously tried and convicted in August 2002 and on appeal the OCCA reversed and remanded the case for a new trial).

the Petitioner's claim of ineffective assistance of appellate counsel, the OCCA found that Petitioner was procedurally barred from raising the claims that he could have raised in his direct appeal.   The OCCA reviewed and rejected on its merits Petitioner's claim of ineffective assistance of appellate counsel.

Petitioner now seeks federal habeas relief from his conviction in Case No. F-2001-4913.   In grounds one and two of his Petition, Petitioner asserts the same claims he raised in his post-conviction application and asserts that ineffective assistance of appellate counsel is the cause for his failure to raise these claims in his direct appeal.   In ground three, Petitioner asserts the three grounds for relief urged in his direct appeal.   Respondent has responded to the Petition and contends that Petitioner has procedurally defaulted his claims raised in grounds one and two except for the claim of ineffective assistance of appellate counsel and that Petitioner is not entitled to habeas relief.

II. Procedural Default and Ineffective Assistance of Appellate Counsel as Cause

Respondent has raised the issue of procedural default with respect to the claims for relief urged in grounds one and two in the Petition that the OCCA determined were barred from review due to Petitioner's failure to assert these claims in his direct appeal.   On habeas review, federal courts will not review claims that have been defaulted in state courts on an independent and adequate state procedural ground, unless the petitioner demonstrates cause for the default and actual prejudice, or alternatively demonstrates a fundamental miscarriage of justice.   Bousley v. United States, 523 U.S. 614, 622 (1998); Sawyer v. Whitley, 505 U.S. 333, 338-339 (1992); Coleman v. Thompson, 501 U.S. 722, 750 (1991); Hickman v. Spears,

6

160 F.3d 1269, 1271 (10th Cir. 1998).

"'A state court's finding is considered independent if it is separate and distinct from federal law.'" Klein v. Neal, 45 F.3d 1395, 1397 (10th Cir. 1995)(quoting Brecheen v. Reynolds, 41 F.3d 1343, 1353 (10th Cir. 1994), cert. denied, 515 U.S. 1135(1995)(internal quotations omitted)).  "'A state court's finding is deemed to be adequate if it is applied evenhandedly; that is, if it is strictly or regularly followed.'" Id. (quoting Brecheen, 41 F.3d at 1353)(internal quotations omitted).

The OCCA concluded that Petitioner had procedurally defaulted the claims he raised in his post-conviction application, except for his claim of ineffective assistance of appellate counsel.  Consequently, Petitioner's state court procedural default of the claims raised in grounds one and two of the Petition also bars federal habeas review of the merits of these claims if (1) the OCCA's application of its procedural bar rule was an independent and adequate state decision for the appellate court's decision and unless (2) Petitioner demonstrates cause for the procedural default and actual prejudice or that a fundamental miscarriage of justice will result from this Court's failure to review the merits of his procedurally-defaulted claims.

Generally, the OCCA's application of its well-established procedural bar rule in denying post-conviction relief is both independent of federal law and an adequate state ground for the OCCA's decision. See Johnson v. Champion, 288 F.3d 1215, 1227 n. 3 (10th Cir. 2002); Duvall v. Reynolds, 139 F.3d 768, 797 (10th Cir.), cert. denied, 525 U.S. 933 (1998).  As to the claims alleged by Petitioner in grounds one and two of the Petition, with

the exception of his ineffective assistance of trial counsel claim which requires further discussion herein and the claim of ineffective assistance of appellate counsel, the OCCA's application of its procedural bar rule to deny post-conviction relief concerning the same claims is an independent and adequate state ground for the court's decision.

As to Petitioner's claim of ineffective assistance of trial counsel asserted in grounds one and two of the Petition, the OCCA concluded that this claim was procedurally defaulted and barred from review because Petitioner did not raise this claim in his direct appeal.  The Tenth Circuit Court of Appeals has recognized that Oklahoma's procedural bar rule will be considered an adequate basis for the OCCA's decision not to review a Sixth Amendment claim so long as the petitioner was allowed "to obtain an objective assessment of trial counsel's performance" in the direct appeal and the petitioner was also allowed "to adequately develop the factual basis of his claims of ineffectiveness" in the state courts. English v. Cody, 146 F.3d 1257, 1263 (10th Cir. 1998). Accord, Miller v. Champion, 161 F.3d 1249, 1252 (10th Cir. 1998)(Oklahoma prisoner may raise ineffective assistance of counsel claim for first time in § 2254 proceeding unless he had opportunity to consult with separate counsel on direct appeal and state provided procedural mechanism affording opportunity to adequately develop factual basis of his claim on direct appeal).

In English, the circuit court concluded that Oklahoma's procedural bar rule may preclude federal habeas review of a claim of ineffective assistance of trial counsel when two conditions are met: "trial and appellate counsel differ, and the ineffectiveness claim can be resolved upon the trial record alone." English, 146 F.3d at 1264.  This second condition has

been expanded somewhat since <u>English</u>.  If an ineffective assistance of trial counsel claim can be resolved solely on the basis of the trial record before the direct-appeal court or if the defendant could have expanded the direct-appeal record sufficiently to permit the ineffective-assistance claim to be raised in a direct appeal, and the defendant had separate counsel for the direct appeal, then Oklahoma's procedural bar rule is an adequate ground for the appellate court's refusal to review the merits of a claim of ineffective assistance of trial counsel. <u>Spears v. Mullin</u>, 343 F.3d 1215, 1252 (10th Cir. 2003).  While "the State bears the ultimate burden of proving that its procedural mechanism is adequate, the habeas petitioner must also allege with specificity why the state procedural rules were inadequate to have permitted him to raise the omitted claim on direct appeal." <u>Id.</u>

Because Petitioner had separate counsel in his direct appeal, the first factor adopted in <u>English</u> governing the issue of the adequacy of OCCA's procedural bar rule is satisfied. Respondent concedes that Petitioner's claim of ineffective assistance of trial counsel arguably could not have been resolved on the basis of the record alone.[2]  However, Respondent has asserted that Oklahoma's procedural bar rule is an independent and adequate state ground for the appellate court's decision not to review Petitioner's procedurally-

---

[2]Petitioner contends, *inter alia*, that he requested certain "character witnesses" be called in his defense at his trial.  Because he testified at his trial, the credibility of his testimony in which he denied committing the robbery was certainly relevant.  Petitioner, does not, however, indicate the nature of the testimony of these potential "character witnesses."  Because he admitted he was present at the convenience store at the time of the robbery of the victim (TR vol. 1, at 259-260), these potential witnesses apparently could have bolstered only his testimony that he was living with his sister and had a job at the time of the robbery.   In any event, there is nothing in the state court record with respect to Petitioner's alleged request to his defense counsel to have these "character witnesses" testify at his trial.

defaulted claims, including his claim of ineffective assistance of trial counsel.  Thus, the burden of showing the inadequacy of Oklahoma's procedural rules shifts to Petitioner.  The OCCA has  adopted a rule which allows a defendant to supplement the record on direct appeal if he presents "clear and convincing evidence [of] a strong possibility trial counsel was ineffective." Okla. Stat. tit. 22, ch. 18, Rule 3.11(B)(3)(b)(i).  In his habeas pleadings, Petitioner does not allege that the OCCA's procedural rule was inadequate to allow him to raise his ineffective assistance of trial counsel claim in his direct appeal.  "Because Petitioner has not put the adequacy of Oklahoma's remand procedure at issue, he cannot demonstrate that Oklahoma's procedural rule is inadequate. Therefore, his claim is procedurally barred." Fleeks v. Poppell, No. 01-6405, 97 Fed. Appx. 251 (10th Cir. Apr. 22, 2004)(unpublished op.), cert. denied, 543 U.S. 933 (2004).

Although Petitioner has procedurally defaulted his claims in grounds one and two in the state courts, he may obtain federal habeas review of the merits of those claims if he shows cause for the procedural default and actual prejudice or a fundamental miscarriage of justice.  As cause for his state court procedural default, Petitioner contends that he was denied effective assistance of appellate counsel.  "'Cause' must be 'something external to the petitioner, something that cannot fairly be attributed to him....'" Steele v. Young, 11 F.3d 1518, 1522 (10th Cir. 1993)(quoting Coleman, 501 U.S. at 753).  "Attorney error amounting to constitutionally ineffective assistance of counsel constitutes 'cause' for a procedural default." Hickman, 160 F.3d at 1272.  "Because the same legal standards govern [a habeas] petitioner's underlying claim of ineffective assistance of counsel and his closely related

burden to show cause for his state law procedural default, [the reviewing court] must determine whether [the] petitioner has shown cause concurrently with the merits of his ineffective assistance of counsel claim." Id. at 1273.

To establish "cause" sufficient to overcome the procedural bar based on ineffective assistance of appellate counsel, and to establish his separate claim of ineffective assistance of appellate counsel, Petitioner must satisfy both prongs of the test established in Strickland v. Washington, 466 U.S. 668 (1984); that is, he must show that his attorney's representation fell below an objective standard of reasonableness and that counsel's errors prejudiced the defense. Id. at 687.   "Judicial scrutiny of the adequacy of attorney performance must be strongly deferential: '[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Blackwell, 127 F.3d 947, 955 (10th Cir. 1997)(quoting Strickland, 466 U.S. at 689). "Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the error." Id.   Accord, Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689.  Prejudice, under the second prong, is shown by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the appeal would have been different." Strickland, 466 U.S. at 694.  "[T]here is no reason for a court deciding an ineffective assistance claim...to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

The Sixth Amendment "does not require an attorney to raise every nonfrivolous issue on appeal." Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995)(citing Jones v. Barnes,

463 U.S. 745, 751 (1983)).  "It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." Jackson v. Shanks, 143 F.3d 1313, 1321 (10th Cir.), cert. denied, 525 U.S. 950 (1998). See Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999)(if omitted issue is meritless, then counsel's failure to raise it on appeal is not constitutionally ineffective assistance). "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance...." Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003).  If the omitted issue "has merit but is not so compelling ... [the court must assess] ... the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance." Id.  See Hawkins, 185 F.3d at 1152 (if omitted issue is meritless, then counsel's failure to raise it on appeal is not constitutionally ineffective assistance).   The merits of Petitioner's procedurally-defaulted claims must therefore be examined to determine whether his appellate counsel's representation was constitutionally deficient.

Petitioner has alleged in grounds one and two of the Petition that his trial counsel provided constitutionally ineffective assistance of counsel because counsel (1) failed to object to the prosecutor's direct examination of the robbery victim during which "improperly elicited 'victim impact-type testimony'" was presented to the jury; (2) failed to "call petitioner's requested character witnesses, namely, petitioner's Sister and Employer, thus

12

prejudicing petitioner, especially in light of the weakness of the prosecutor's case;" and (3)

failed to "object to the introduction of victim impact-type photos" during the guilt-innocence

phase of the trial.

Although he did not raise this Sixth Amendment claim in his direct appeal, Petitioner

did raise in his direct appeal a claim of prosecutorial misconduct based on the same

underlying facts.  Petitioner asserted in his appeal that

> during direct examination of [the robbery victim] the prosecutor,
> without objection, improperly elicited inadmissible, irrelevant,
> and unfair prejudicial victim impact-type testimony in the form
> of details about how [the victim's] wrist injur [sic] adversely
> affected her daily routine, including being unable to cook or do
> housework, being confined to bed because of the pain, and being
> unable to drive and take supper and medicine to her elderly
> mother in a retirement home (Tr I 57-59).  The impact of the
> injury on [the robbery victim] was also mentioned by the
> prosecutor in both her opening and closing arguments.

Response, Ex. 1, at 10-11.  The OCCA rejected Petitioner's claim of prosecutorial

misconduct and found, with respect to this specific claim of misconduct, that "[a]ny error in

admitting and discussing victim impact-type testimony was harmless, as it had no substantial

influence on the verdict." Response, Ex. 3, at 2-3.

The prosecutor had the burden of convincing the jury that the accounts of the robbery

victim and the eyewitnesses were truthful and consistent.  Thus, the extent and severity of

the robbery victim's injuries were relevant to corroborate the accuracy of the accounts of the

victim and the eyewitnesses.   Trial counsel's failure to object to the admission of this

testimony by the robbery victim or to photographs of the injuries received by the victim as

a result of the robbery was not unreasonable.  Moreover, a review of the trial record reveals overwhelming evidence of Petitioner's guilt was presented at his trial.  The two eyewitnesses provided consistent and solid identifications of Petitioner as the robber both at the time of his arrest and during the trial, and their testimony reflects that they had adequate opportunity to view the Petitioner from a close distance.  Thus, even if counsel erred in failing to object to this testimony and evidence, Petitioner has not shown actual prejudice as a result of the error.  The remaining claim of ineffective assistance is based on counsel's alleged failure to call as witnesses two individuals, identified only as his "Sister and Employer," to provide "character" evidence in Petitioner's defense.  Because Petitioner admitted during his testimony at the trial that he was present at the convenience store at the time of the robbery and because Petitioner did not testify that either of these individuals was present at the time of the robbery offense, these so-called "character" witnesses could not have testified to facts directly relevant to his guilt or innocence.  "[T]he decision of what witnesses to call is a tactical one within the trial counsel's discretion." Minner v. Kerby, 30 F.3d 1311, 1317 (10th Cir. 1994).  Assuming the truth of Petitioner's assertion that he requested his trial counsel call these potential witnesses to provide only "character" evidence, counsel's tactical decision not to call these witnesses is well within the range of reasonable professional assistance.  There may have been any number of strategic reasons why trial counsel chose not to call these potential witnesses to testify at Petitioner's trial.  The Petitioner's vague claim that these individuals would have provided "character" testimony does not overcome the presumption of reasonable, professional assistance attached to this tactical decision.

14

Accordingly, because Petitioner's claim of ineffective assistance of trial counsel is without merit, Petitioner has not shown that his appellate counsel provided constitutionally ineffective assistance in failing to raise this claim, and Petitioner has not shown cause for his state court procedural default of this claim.

Petitioner also raises in grounds one and two of the Petition a claim that his due process rights were violated because the trial court never ruled on a motion to quash and dismiss the charge for insufficient evidence filed by his counsel on May 10, 2002. Petitioner raised this claim for the first time in his post-conviction application, and the OCCA initially refused to review it based on the court's procedural bar rule for claims not raised in a direct appeal. However, the OCCA addressed the merits of the claim and ruled that the district court had jurisdiction to enter the conviction. The OCCA further found that Petitioner had not shown that his appellate counsel provided constitutionally ineffective assistance by failing to raise this claim in the direct appeal. Petitioner provides no coherent argument in support of his claim of a due process violation. Petitioner provides no documentary evidence to support his assertion or any authority supporting his claim that the failure to rule on a pre-trial motion to quash for insufficient evidence somehow renders the trial court without jurisdiction to conduct a trial. Moreover, the pre-trial motion referenced by Petitioner would have preceded the OCCA's decision rendered in August 2003 to reverse the conviction and remand the matter for a new trial. <u>See</u> Response, Ex. 3, at fn. 1. Petitioner does not allege that the motion to dismiss the charge was renewed following the remand of the case to the district court. This claim has no merit. Petitioner has not overcome the presumption that his

appellate counsel provided reasonable, professional assistance or shown cause for his procedural default of this claim by failing to assert it in his direct appeal.

In grounds one and two of the Petition, Petitioner also asserts a claim of a due process violation based on <u>Doyle v. Ohio</u>, 426 U.S. 610 (1976). Petitioner contends that during the trial the prosecutor elicited testimony from a police officer concerning Petitioner's "Post-Arrest Silence." Petition, at 5. However, Petitioner does not cite to a particular page reference in the trial transcript or include any information necessary to determine the source of this alleged testimony. A review of the testimony of the two police officers who testified at Petitioner's trial does not reflect any testimony concerning Petitioner's statements or silence following his arrest. Accordingly, this claim is without merit. Petitioner has not overcome the presumption that his appellate counsel provided reasonable, professional assistance or shown cause for his procedural default of this claim by failing to raise it in his direct appeal.

Petitioner next contends that a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), occurred during his trial. Petitioner refers to the testimony of a police officer that the officer saw a blue shirt hanging from Petitioner's back pocket after he was arrested and placed in a patrol car. Petitioner alleges that "no such T-Shirt was ever booked into evidence to be used against Petitioner" or disclosed by the prosecution as evidence to be used against Petitioner at the trial. In <u>Brady</u>, the Supreme Court held that the prosecution's suppression of evidence "favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment." <u>Id.</u> at 87.

16

The Petitioner's only argument in support of this <u>Brady</u> claim is that the police officer's testimony concerning this blue shirt was "false" and "prejudicial." Reply, at 7.  He has not alleged that the "blue shirt" was ever in the custody of law enforcement or the prosecution, or that the "blue shirt," if it existed, would have provided evidence favorable to his defense or material to the issues of his guilt or punishment.   The only reference to a "blue shirt" in the trial transcript is in Officer Duroy's testimony on cross-examination that Petitioner "had a shirt, a blue shirt in his back pocket when he was arrested." (TR vol. 1, at 242).   After this statement, Petitioner's counsel objected and moved for a mistrial on the basis that Officer's Duroy's statement constituted an "evidentiary harpoon.  There was no blue shirt." (TR vol. 1, at 242).   However, the trial court refused to grant a mistrial and overruled the objection because Officer Duroy "testified to that at the last trial" and defense counsel had "known that since August of 2002.  That's not an evidentiary harpoon.  He's telling what he saw." (TR vol. 1, at 242-243).     Petitioner's defense counsel further questioned Officer Duroy as to the "blue shirt" and Officer Duroy testified that he did not take the shirt from Petitioner as evidence because it was not included in the description of Petitioner obtained from the witnesses.  (TR vol. 1, at 243).  As part of Petitioner's defense, an Oklahoma County Sheriff's Department official testified that when Petitioner was booked into the Oklahoma County Detention Center the jail's record did not reflect that Petitioner was wearing a blue shirt.  (TR vol. II, at 80-81).  Petitioner's claim of a <u>Brady</u> violation is meritless, and Petitioner has not overcome the presumption that his appellate counsel provided reasonable, professional assistance or shown cause for his procedural default of this

claim by failing to raise it in his direct appeal.

Petitioner next contends that the trial court violated his speedy trial rights by failing to initiate his new trial within 70 days after the mandate issued in his first appeal.  Petitioner relies on the statute governing federal criminal prosecutions, which does not apply to his state court conviction.   Although both the United States Constitution and the Oklahoma Constitution guarantee defendants a general right to a speedy trial, Oklahoma does not have a statutory speedy trial provision mandating a particular time period for initiating a trial against a defendant. Lott v. State, 98 P.2d 318, 327 fn. 2 (Okla. Crim. App. 2004), cert. denied, __ U.S. __, 125 S.Ct. 1699 (2005).  Thus, Petitioner's speedy trial claim is governed by the balancing test established in Barker v. Wingo, 407 U.S. 514 (1972), for evaluating claims of denial of the constitutional right to a speedy trial "in which the conduct of both the prosecution and the defendant are weighed." Id. at 530.  Pursuant to Wingo, The four factors to be considered include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id.

The record of Petitioner's trial reflects that at the beginning of the trial the trial court considered Petitioner's *pro se* motion requesting dismissal of the charge due to the State's failure to bring him to trial within 70 days after the OCCA's mandate issued reversing and remanding the case for a new trial. (TR vol. 1, at 7).  The trial court rejected Petitioner's motion and stated her reasoning in the record:

> [t]his case has been set for trial a few times previously.  For reasons outside of the control of the court or the lawyers, the case was not able to proceed to trial.  I know the last time it was

> set, the state was in trial on a murder case in this courtroom.
> And I think one time before maybe that [Petitioner's defense
> counsel] had a conflict.

(TR vol. 1, at 7-8).  Petitioner has relied solely on the length of the delay in initiating the re-

trial, and he has made no attempt to show that the remaining three factors should weigh

heavily against the prosecution.  The trial court stated that at least a portion of the delay was

caused by the defense and a portion of the delay was caused by an overcrowded court

schedule.  Petitioner's re-trial was conducted eight months following the entry of the

OCCA's decision reversing and remanding the case for a new trial, and Petitioner has

identified no prejudice resulting from any delay in conducting the new trial following his

successful first appeal.  Accordingly, Petitioner's speedy trial claim is without merit.

Petitioner has not overcome the presumption that his appellate counsel provided reasonble,

professional assistance, and Petitioner has not shown cause for his procedural default of this

claim in the state courts.

Petitioner next contends that he was denied his Sixth and Fourteenth Amendment

rights to confront and cross-examine a witness.  In support of this claim, Petitioner refers to

the testimony of an unidentified police officer at his trial that an individual identified as

Duane Rapier "implicated Petitioner in the crime." The two police officers who testified at

Petitioner's trial did not state that a "Duane Rapier" provided information concerning

Petitioner's culpability in the robbery offense.  One of the officers, Officer James, testified

that he overheard a police dispatcher indicate in a radio transmission that there was a

disturbance at 1802 North Rockwell, Apartment 205, and that the "caller had advised the

Bethany dispatcher that there was a man trying to get into his apartment, beating on the door." (TR vol. 1, at 197).  Officer James further testified that "the dispatch relayed over their radio was that the gentleman that was banging on the door was saying, Let me in, let me in, and stated that the police were after him or looking for him." (TR vol. 1, at 198).

Officer James testified that based on this radio dispatch he and other officers went to the 1802 North Rockwell location as quickly as they could and that when he arrived at the apartment building other officers "were walking the individual that ... had been causing that disturbance, [and] they had had him detained and were walking him out to the parking lot." (TR vol. 1, at 198).   Officer James further testified that he took custody of Petitioner and placed him in the patrol car. (TR vol. 1, at 200).  Officer James stated that the person who made the call to the Bethany Police Department from apartment 205 "came to the parking lot and we obtained information from him" and that this person identified Petitioner as the same person that was beating on his door and asking to get in because the police were after him. (TR vol. 1, at 200).    Immediately prior to this testimony, Petitioner's counsel requested that a limiting instruction be given to the jury stating "that it's not to be considered for the truth of the matter asserted, [rather] it's to be considered merely for why the officer went to that location." (TR vol. 1, at 188).  The trial court overruled this request. (TR vol. 1, at 188-189).

In Petitioner's direct appeal, he asserted that it was error for the trial court to fail to give the requested instruction on the use of hearsay testimony because Officer James' testimony contained hearsay that the jury was allowed to consider as evidence of Petitioner's

guilt without proper instruction. Response, Ex. 1, at 7-8.  In rejecting the Petitioner's claim

of error, the OCCA found that "[t]he testimony in question was not offered for the truth of

the matter asserted and therefore was not hearsay .... As the testimony was admitted solely

to show the basis for the officers' actions, a cautionary instruction on hearsay testimony was

not necessary." Response, Ex. C, at 2.

In Oklahoma, it is well established that "the hearsay rule does not preclude a witness

from testifying about the actions he or she took as a result of a conversation with a third

party." Fontenot v. State, 881 P.2d 69, 82 (Okla. Crim. App. 1994).  Prior to Petitioner's trial

and therefore applicable to this proceeding, the Supreme Court addressed the interaction

between the Confrontation Clause and hearsay statements in Crawford v. Washington, 541

U.S. 36 (2004).  In Crawford, the Supreme Court concluded that the Sixth Amendment does

not allow the admission of testimonial statements  of a witness who does not appear at trial

unless the witness is unavailable to testify and the defendant had a prior opportunity for

cross-examination of the unavailable witness. Id. at 53-54.  The Court found that "testimonial

evidence" covers, at a minimum, "prior testimony at a preliminary hearing, before a grand

jury, or at a former trial; and to police interrogations." Id. at 68.  In this case, the officer's

testimony concerning the dispatch he overheard relating the caller's statements does not

implicate the "specific type of out-of-court statement" targeted by the Confrontation Clause.

Id. at 51 (noting that "[a]n accuser who makes a formal statement to government officers

bears testimony in a sense that a person who makes a casual remark to an acquaintance does

not. The constitutional text ... reflects an especially acute concern with a specific type of out-

of-court statement."). However, the caller also made a statement to the officer in response to formal inquiry by the officer after Petitioner's arrest, and this statement was therefore testimonial in nature.

Even assuming that it was error for the trial court to admit the hearsay statements of the 911 caller, "Confrontation Clause violations are subject to harmless error analysis and thus may be excused depending on the state of the evidence at trial." Brown v. Uphoff, 381 F.3d 1219, 1226 (10th Cir. 20040.   Assuming the challenged testimony by Officer James concerning the statements of the 911 caller before and after Petitioner's arrest constituted inadmissible hearsay, other independent evidence presented at Petitioner's trial, including the positive identifications of Petitioner by the two eyewitnesses, his arrest in close proximity to the scene of the robbery, and the evidence showing the eyewitness's description of the robber matched Petitioner's appearance at the time of this arrest, provided overwhelming evidence of Petitioner's guilt. Petitioner himself testified that he was running from the police at the time he was arrested, and the 911 caller's statement to Officer James that Petitioner was the individual who knocked on his apartment door and asked to be let in because the police were following him did not directly implicate Petitioner in the robbery itself. There is no indication that the testimony by Officer James with respect to the 911 caller's statements had any impact on the jury. Accordingly, the admission of the officer's testimony was harmless error.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Even though the Petitioner's Confrontation Clause claim had some merit, Petitioner's appellate counsel raised well-supported claims concerning the sufficiency of the jury

instructions and the prosecutor's conduct during the trial, and these tactical decisions are entitled to deference, particularly in view of the record reflecting overwhelming evidence of Petitioner's guilt.  Petitioner has not shown that he was prejudiced by any error by his appellate counsel in failing to raise this Confrontation Clause issue in his direct appeal, and Petitioner has not shown cause for his procedural default of this claim in his direct appeal.

Because Petitioner has not shown that he received constitutionally ineffective assistance of counsel in his direct appeal, he has not shown cause for his state court procedural default.  Consequently, Petitioner can obtain federal habeas review of the defaulted claims he raises in grounds one and two of the Petition only if he satisfies the fundamental miscarriage of justice exception to the procedural default doctrine. Petitioner has not alleged that this Court's failure to review the merits of his defaulted claims would result in a fundamental miscarriage of justice.  This exception to the procedural default doctrine applies only in cases where the habeas petitioner can show that the claimed errors "'probably resulted in the conviction of one who was actually innocent.'" Sellers v. Ward, 135 F.3d 1333, 1338 (10th Cir.)(quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)(internal quotations omitted)), cert. denied sub nom. Sellers v. Gibson, 525 U.S. 1024 (1998).  See Herrera v. Collins, 506 U.S. 390, 404 (1993)("The fundamental miscarriage of justice exception is available only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence.").  In view of the overwhelming evidence of Petitioner's guilt presented at his trial, Petitioner has not shown that a fundamental miscarriage of justice would result from the application of the procedural default doctrine.

Accordingly, federal habeas review of the procedurally defaulted claims raised by Petitioner in grounds one and two of the Petition is barred.

III. Prosecutorial Misconduct

In ground three, Petitioner asserts that he was denied a fair trial consistent with his right to due process because of prosecutorial misconduct. Petitioner raised this claim in his direct appeal, and the OCCA rejected the claim. With respect to Petitioner's specific allegations of prosecutorial misconduct, the OCCA found that "[t]he prosecutor's statements during closing argument were proper comments on the evidence" and "[a]ny error in admitting and discussing victim impact-type testimony was harmless, as it had no substantial influence on the verdict." Response, Ex. 3, at 2-3.

Because the OCCA reached the merits of and rejected this claim, habeas relief may be awarded only if the OCCA's adjudication of the same claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254 (d). This standard, which was adopted as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), directs the focus of judicial review to the state appellate court's decision and not its reasoning. Saiz v. Ortiz, 392 F.3d 1166, 1176 (10th Cir. 2004), cert. denied, __ U.S. __, 125 S.Ct. 2976 (2005). Under this standard, federal courts reviewing habeas claims that have previously been resolved on the merits in state courts must apply a "level of 'deference to the determinations of state courts,'

24

provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H.R.Conf.Rep.No. 104-518, p. 111 (1996)). A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion opposite to that reached by the Supreme Court on a question of law or (2) decided an issue differently than the Supreme Court has on a set of materially indistinguishable facts. Id. at 405-406. The "state court decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions." Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(per curiam). "[A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Id. (quoting Early v. Packer, 537 U.S. 3, 8 (2002)(per curiam)). A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 125 S.Ct. 1432, 1439 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003). With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court case] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(per curiam). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(per curiam)(citations omitted). The AEDPA

also mandates that factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"In determining whether a petitioner is entitled to federal habeas relief for prosecutorial misconduct, it must be determined whether there was a violation of the criminal defendant's federal constitutional rights which so infected the trial with unfairness as to make the resulting conviction a denial of due process." Fero v. Kerby, 39 F.3d 1462, 1473 (10th Cir. 1994)(citing Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)), cert. denied, 515 U.S. 1122 (1995). Accord, Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir.), cert. denied, 522 U.S. 844 (1997). This determination is made after "tak[ing] notice of all the surrounding circumstances, including the strength of the state's case." Coleman v. Brown, 802 F.2d 1227, 1237 (10th Cir. 1986).

Petitioner's claim of prosecutorial misconduct is muddled. He has inexplicably intertwined this claim with his claim of trial error in the failure to give certain jury instructions. Petitioner contends that the prosecutor's "statements during closing argument were unconstitutional comments on the evidence" and that the prosecutor's "actions in admitting and discussing victim impact type testimony before the jury was [sic] not harmless...." Petition, at 10. The two instances of prosecutorial misconduct alleged by Petitioner in his direct appeal concerned the prosecutor's direct examination of the robbery victim and closing argument. With respect to the prosecutor's examination of the robbery victim, Petitioner complained in his direct appeal that the prosecutor elicited prejudicial

victim-impact testimony concerning the effect of the victim's injuries upon her daily routine. With respect to closing argument, Petitioner contended that the prosecutor improperly referred to the hearsay statements of the 911 caller.   Given the *pro se* nature of the Petition, the Petition is generously construed to assert the same claim of prosecutorial misconduct that Petitioner asserted in his direct appeal.

Considering the trial record as a whole, the prosecutor's direct examination of the victim concerning the impact of her injuries and the prosecutor's brief reference in closing argument to the 911 caller's statement did not so infect the trial with unfairness as to deprive Petitioner of due process, particularly in view of the substantial evidence of his guilt presented at the trial.   The OCCA's rejection of this claim of prosecutorial misconduct was not contrary to, or an unreasonable application of, clearly-established Supreme Court jurisprudence, and Petitioner is not entitled to habeas relief with respect to this claim.

IV. <u>Jury Instructions</u>

In ground three, Petitioner also asserts that the trial court erred in failing to give requested jury instructions on hearsay evidence and eyewitness identification testimony. Petitioner asserted these same claims in his direct appeal.   The OCCA rejected the claims. With respect to the requested instruction on eyewitness identification testimony, the OCCA found that the trial court did not abuse its discretion in refusing to give this requested cautionary instruction as the "two eyewitnesses had sufficient opportunity for a positive identification and never failed to make a positive identification throughout the proceedings" and therefore "a cautionary instruction was not warranted." Response, Ex. 3, at 2.   The

OCCA further found that the trial did not abuse its discretion in refusing to give the requested cautionary instruction on hearsay testimony because the testimony regarding the statements of the 911 caller was not hearsay and was admitted "solely to show the basis for the officers' actions," and therefore no cautionary instruction on hearsay testimony was needed. Id.

"Habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the error had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense." Shafer v. Stratton, 906 F.2d 506, 508 (10th Cir.), cert. denied, 498 U.S. 961 (1990).  The petitioner who attacks a state conviction on the basis of the jury instructions "has a great burden." Maes v. Thomas, 46 F.3d 979, 984 (10th Cir.), cert. denied, 514 U.S. 1115 (1995). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).   In light of the substantial evidence of Petitioner's guilt presented at his trial, and in view of his failure to overcome the presumption of correctness attached to the OCCA's factual findings made in rejecting these same claims of trial error, Petitioner fails to show that the trial court's refusal of his request to give these cautionary jury instructions resulted in a fundamentally unfair trial.

To the extent Petitioner is contending that the cumulative effect of the state court's errors denied him due process, this claim fails.  "Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998).  If the admission of the hearsay evidence constituted constitutional error, the error was clearly harmless.  In the absence of

any other errors, it is not necessary to engage in cumulative error analysis.

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.  Petitioner's Motion for Leave to Proceed *In Forma Pauperis* (Doc. #2) is DENIED.   The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by ____March 9th____ , 2006, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein.  <u>Moore v. United States of America</u>, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this ____17th____ day of ____February____, 2006.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE